# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDGE MARK A. BRUNO, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 13-1357 |
| | : | |
| THE SUPREME COURT | : | |
| OF PENNSYLVANIA, et al., | : | |
|     Defendants. | : | |

May __13_, 2013                                                                                                                                           Anita B. Brody, J.

## **MEMORANDUM**

      Plaintiff Judge Mark A. Bruno brings suit under 42 U.S.C. § 1983 against Defendants the Supreme Court of Pennsylvania, Chief Justice Ronald D. Castille, Justice Thomas G. Saylor, Justice J. Michael Eakin, Justice Deborah McCloskey Todd, Justice Seamus P. McCaffery, and Justice Max Baer (collectively, "PA Supreme Court Defendants"). On February 1, 2013, the Pennsylvania Supreme Court sua sponte suspended Bruno without pay. Bruno claims that the PA Supreme Court Defendants violated his procedural due process rights under the Fourteenth Amendment.

      Bruno has filed a motion for preliminary injunction, requesting that I enjoin "the Defendants from suspending Judge Mark A. Bruno without pay and benefits pending the resolution of his criminal trial." Pl.'s Mot. 2. The PA Supreme Court Defendants request that the motion for a preliminary injunction be denied. For the reasons set forth below, I will deny Bruno's motion.

## I. BACKGROUND[1]

Plaintiff Judge Mark A. Bruno is a Pennsylvania Magisterial District Judge in the Borough of West Chester. At the request of the Pennsylvania Supreme Court, Bruno has presided over cases in the Philadelphia Traffic Court once a year for four or five days while Traffic Court judges are away on training.

On January 29, 2013, Bruno was indicted by a federal grand jury in the Eastern District of Pennsylvania, and charged with one count of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; one count of wire fraud, in violation of 18 U.S.C. § 1343; and one count of mail fraud, in violation of 18 U.S.C. § 1341. The indictment charges that Bruno and his co-conspirators "used the Philadelphia Traffic Court . . . to give preferential treatment to certain ticketholders, most commonly by 'fixing' tickets for those with whom they were politically and socially connected." Compl. Ex. A ¶ 1.

On February 1, 2013, without any prior notice to Bruno, the Pennsylvania Supreme Court issued an order ("Suspension Order") suspending Bruno without pay. The Suspension Order states:

> **PER CURIAM**
>
> **AND NOW**, this 1st day of February 2013, it is hereby ordered that Magisterial District Judge Mark A. Bruno for Magisterial District 15-1-01, of the Fifteenth Judicial District, Chester County, Pennsylvania, is hereby relieved of any and all judicial and administrative responsibilities as a judge of the Magisterial District Court.
>
> It is further ordered that Judge Mark A. Bruno is suspended without pay pending further Order of this Court.
>
> This Order is without prejudice to the rights of Judge Mark A. Bruno to seek relief in this Court for the purpose of vacating or modifying this Order. In Re: Avellino, 609 A.2d 1138 (Pa. 1997); and see In Re: McFalls, 795 A.2d 367 (Pa. 2002).

---

[1] All facts are taken from the Complaint and the attached exhibits.

Compl. Ex. B. Since the February 1, 2013 Order, Bruno has not received any pay. He still receives medical benefits, but has to pay $72.00 per month to receive them.

## II. SUBJECT MATTER JURISDICTION

The PA Supreme Court Defendants argue that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. The doctrine is named after the only two Supreme Court cases to have applied the doctrine to defeat federal subject matter jurisdiction: *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker-Feldman* is a narrow doctrine "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Lance v. Dennis*, 546 U.S. 459, 464 (2006). "*Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction . . . ." *Exxon*, 544 U.S. at 291. Under 28 U.S.C § 1257, only the Supreme Court is vested with jurisdiction over appeals from final state-court judgments. "Accordingly, under what has come to be known as the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over *final* state-court judgments." *Lance*, 546 U.S. at 463 (emphasis added). Thus, the *Rooker-Feldman* doctrine only applies in the "limited circumstances" where "the losing party in state court filed suit in federal court *after the state proceedings ended*, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon*, 544 U.S. at 291 (emphasis added). Parallel state and federal litigation does not trigger application of the *Rooker-Feldman*

doctrine, even when the federal litigation is initiated after the state proceedings have commenced. *Id.* at 291-94.

While Courts of Appeals recognize that *Rooker-Feldman* only applies to federal district court suits filed after state proceedings are final, there is some disagreement as to when a state proceeding has sufficiently "ended" to trigger *Rooker-Feldman*. *Compare Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 28 (1st Cir. 2005) (*Rooker-Feldman* applied where the Puerto Rico Supreme Court had finally resolved the sole federal question in an interlocutory ruling), *with TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584 (7th Cir. 2005) (*Rooker-Feldman* does not apply to interlocutory rulings because the state-court proceeding has not ended). Even under the broadest definition of this requirement, state proceedings have not ended here. In *Federacion*, the First Circuit adopted a broad and comprehensive test to determine if state proceedings had ended for *Rooker-Feldman* purposes. *See also Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009) (applying *Federacion* test); *Guttman v. Khalsa*, 446 F.3d 1027, 1032 n.2 (10th Cir. 2006) (approvingly citing *Federacion* test); *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005) (applying *Federacion* test). According to the First Circuit, state proceedings have "ended" in the following three situations: (1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved"; (2) "if the state action has reached a point where neither party seeks further
action . . . . For example, if a lower state court issues a judgment and the losing party allows time for appeal to expire"; and (3) "if the state court proceedings have finally resolved all the federal questions, but state law or purely factual questions (whether great or small) remain to be litigated." *Federacion*, 410 F.3d at 24-25.

Here, the Pennsylvania Supreme Court sua sponte issued the Suspension Order, suspending Bruno "pending further Order of this Court . . . without prejudice to the rights of Judge Mark A. Bruno to seek relief in this Court for the purpose of vacating or modifying this Order." Compl. Ex. B. On its face, the Suspension Order is not final and does not end the state proceedings because it anticipates further action of the Pennsylvania Supreme Court and invites Bruno to appeal his suspension by seeking to vacate or modify the Order. The Suspension Order fits none of the situations described above, in which state proceedings have ended. The Suspension Order does not affirm the judgment of any lower court and it clearly leaves more to be resolved. Additionally, both parties may seek further action. In fact, no time limitation has been placed on Bruno's right to appeal his suspension. Moreover, the language of the Suspension Order indicates that the Pennsylvania Supreme Court intends to take further action. Lastly, the state court proceedings have not yet resolved Bruno's constitutional challenge to his suspension, but it is reasonable to presume that the Pennsylvania Supreme Court will entertain this challenge if Bruno seeks to vacate or modify the Suspension Order. According to the Third Circuit:

> When the "administrator" making a decision is a state supreme court and that state supreme court presents a litigant with an opportunity to present arguments to the court, it is reasonable for a party to expect that such a body will entertain constitutional challenges to its actions and to expect litigants to be on notice of this possibility, even if the state court seems to be acting in an administrative capacity.

*Guarino v. Larsen*, 11 F.3d 1151, 1161 (3d Cir. 1993). Therefore, the *Rooker-Feldman* doctrine does not apply because the state proceedings have not ended and a final judgment has not issued.

Furthermore, the *Rooker-Feldman* doctrine is inapplicable because under the doctrine, "a United States District Court has no authority to review final judgments of a state court in *judicial proceedings*." *Feldman*, 460 U.S. at 482 (emphasis added). In order for *Rooker-Feldman* to

5

apply, a judicial proceeding, rather than an administrative act, must have occurred. *Feldman*, 460 U.S. at 476-77; *Guarino*, 11 F.3d at 1157. In determining whether this requirement has been met, the Third Circuit has equated "judicial proceedings" with "adjudicative acts." *See Blake v. Papadakos*, 953 F.2d 68, 71-72 (3d Cir. 1992). There are two types of administrative acts, legislative and ministerial acts. *Id.* at 1157-58 (citing *Feldman*, 460 U.S. at 477, 479). The Supreme Court has explained that an act is adjudicative if it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed to already exist." *Feldman*, 460 U.S. at 477 (internal quotation marks omitted). Whereas, a legislative act "looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.* (internal quotation marks omitted). "Ministerial acts, although not precisely defined by the Supreme Court, are acts taken with respect to particular individuals based on the preferences of the actor; they do not involve application of preferences inscribed in existing law; nor do they involve the creation of a rule that will apply in the future." *Guarino*, 11 F.3d at 1157.

In *Guarino*, Judge Guarino brought suit in the Eastern District of Pennsylvania against the Justices of the Supreme Court of Pennsylvania and the statewide court administrator. 11 F.3d at 1152. Guarino sued the defendants under 42 U.S.C. § 1983, alleging the defendants had violated his constitutional rights when they peremptorily removed him from office on November 10, 1992. *Id.* On November 10, 1992, the Pennsylvania Supreme Court, without any prior notice to Guarino, issued an order revoking Guarino's assignment as a senior judge. *Id.* at 1154. A class action lawsuit had been filed against Guarino in federal court concerning his treatment of venirepersons, but the November 10, 1992 order failed to provide any reason for revocation of Guarino's assignment. *Id.* On February 26, 1993, the Pennsylvania Supreme Court issued

6

another order directing Guarino to appear before the Supreme Court on March 9, 1993 to show cause why the November 10, 1992 order should not remain in effect. *Id.* at 1155. Guarino did not appear, and on March 10, 1993, the Pennsylvania Supreme Court issued a per curiam order affirming its November 10, 1992 order. *Id.* In the March 10, 1993 order, the Pennsylvania Supreme Court justified its order by pointing to the class action lawsuit filed against Guarino, and explaining that "the temporary assignment of a retired judge to judicial service is a matter solely within the discretion of this Court, and any such assignment may be revoked for any reason at this Court's discretion." *Id.* (internal quotation marks omitted). Additionally, the Pennsylvania Supreme Court stated that the March 9, 1993 hearing had "afforded Judge Guarino an opportunity to present all the facts, legal contentions and other considerations he deemed appropriate and relevant." *Id.* (internal quotation marks omitted).

On appeal, the Third Circuit, in an opinion authored by the late Judge Edward R. Becker, addressed whether the district court lacked jurisdiction over the action under the *Rooker-Feldman* doctrine. *Id.* at 1156. The Third Circuit concluded that the initial November 10, 1992 order, considered in isolation, was not adjudicative. *Id.* at 1159. However, the Third Circuit held that the March 10, 1993 order was adjudicative because it reached legal conclusions on Guarino's claims. *Id.* Thus, the Third Circuit held that the *Rooker-Feldman* doctrine applied and the district court had no jurisdiction over the action.

Of import to this case is the Third Circuit's explanation that the November 10, 1992 order standing alone was not adjudicative. The following factors led the Third Circuit to reach this conclusion: (1) "the November 10 order was issued under the powers granted to the supreme court to administer the state courts; it was not an attempt to construe the meaning of those laws and to apply them to particular facts"; (2) "the Pennsylvania Supreme Court did not apply any

7

other laws in issuing its November order"; and (3) "Judge Guarino made no claim of right and the Pennsylvania Supreme Court did not deny any claim of right. There was simply no evidence to indicate that the court was applying existing laws to determine a claim of right." *Id.* at 1158-59. The defendants argued that the November 10, 1992 order had to be adjudicative "because it did not look to the future to change existing conditions through the enactment of a new rule." *Id.* at 1159. The Third Circuit rejected the defendants' argument that if an act was not legislative it had to be adjudicative. *Id.* Rather, the Third Circuit explained: "An actor's decisions that are based on personal preferences rather than legal rules are not adjudicative decisions even if the preferences are about a particular individual and are related to matters that have occurred in the past." *Id.* Ultimately, the Third Circuit concluded that the absence of the application of existing laws to the case in the November 10, 1992 order was "fatal" to the defendants' claim that the order was adjudicative. *Id.*

In *Guarino*, *Rooker-Feldman* only became applicable after the Pennsylvania Supreme Court issued a second order adjudicating Guarino's legal claims. In Bruno's case, the Pennsylvania Supreme Court has issued only one order. Like the November 10, 1992 order in *Guarino*, the Suspension Order was issued sua sponte without prior notice to Bruno. Moreover, the Suspension Order fails to mention Bruno's indictment or provide any justification for Bruno's suspension. The Pennsylvania Supreme Court issued the Suspension Order without Bruno having made any claim of right and without the court denying any claim of right. Unlike in *Guarino*, the Suspension Order, which suspended Bruno without analysis, string cites two Pennsylvania Supreme Court cases: *In re Avellino*, 690 A.2d 1138 (Pa. 1997) and *In re McFalls*, 795 A.2d 367 (Pa. 2002). Compl. Ex. B. These cases stand for the proposition that the Pennsylvania Supreme Court maintains the ability to discipline judges based on its inherent

8

supervisory powers to administer the courts. *McFalls*, 795 A.2d at 372-73; *Avellino*, 690 A.2d at 1143-44. By citing to these cases the Pennsylvania Supreme Court acknowledges that it has supervisory powers to issue the order, but, as in *Guarino*, "it [i]s not an attempt to construe the meaning of those laws and to apply them to particular facts." 11 F.3d at 1158. As in *Guarino*, "there [is] simply no evidence to indicate that the court was applying existing laws to determine a claim of right." *Id.* at 1159. Rather, the Suspension Order appears to be a ministerial act that, like the order revoking Guarino's assignment as a senior judge, is "based on personal preferences rather than legal rules." *Id.* The Pennsylvania Supreme Court's failure to apply existing laws to Bruno's case is fatal to the PA Supreme Court Defendants' claim that the Suspension Order was adjudicative.

The *Rooker-Feldman* doctrine does not apply because the Suspense Order is not adjudicative nor did it end the state proceedings. Therefore, *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction. I exercise federal question jurisdiction over Bruno's claim that the PA Supreme Court Defendants violated his procedural due process rights pursuant to 28 U.S.C. § 1331. I will now consider the merits of Bruno's motion.

### III. LEGAL STANDARD FOR PRELIMINARY INJUNCTION

In deciding whether to grant a motion for preliminary injunction, a court must consider the following: (1) the plaintiff's likelihood of success on the merits at the final hearing; (2) the extent to which the plaintiff is being irreparably harmed; (3) the extent to which the defendant will suffer irreparable harm if the motion is granted; and (4) the public interest. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor

9

preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

## IV. PROCEDURAL DUE PROCESS

The PA Supreme Court Defendants contend that Bruno is not likely to succeed on the merits of his procedural due process claim, thus Bruno's motion for preliminary injunction should be denied.[2] Bruno opposes this conclusion. Bruno cannot prevail on his request for an injunction because he cannot demonstrate a likelihood of success on the merits at this stage in the litigation.

The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "[T]o establish a procedural due process claim, a plaintiff must demonstrate that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011) (internal quotation marks omitted). The PA Supreme Court Defendants argue that Bruno cannot succeed on his procedural due process claim because he does not have a property interest in his judicial position and, even if he does have a property interest, he has not been deprived of due process of the law. Bruno alleges that when the PA Supreme Court Defendants suspended him without pay they deprived him of due process of the law because they failed to provide him with a pre or post-suspension hearing. Regardless of whether Bruno has a property interest in his position, he is unlikely to succeed in establishing that he has been deprived of due process of the law.

### A. Pre-Suspension Hearing

---

[2] The Supreme Court Defendants raise several other arguments why Bruno's motion for preliminary injunction should be denied. I need not address them because Bruno is not likely to succeed on the merits of his procedural due process claim.

Bruno argues that he was entitled to a pre-suspension hearing, but was not afforded one. The PA Supreme Court Defendants counter that they were not constitutionally required to provide Bruno with a pre-suspension hearing.

In *Gilbert v. Homar*, 520 U.S. 924 (1997), the Supreme Court addressed the question whether a State had deprived a tenured police officer, who had been criminally charged with a felony, of due process of the law by failing to provide the employee with a hearing before it suspended him without pay. To determine what process was constitutionally due, the Court examined the following three factors: "'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Gilbert*, 520 U.S. at 931-32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The private interest depends upon both "the *length*" and "*finality* of the deprivation." *Id.* at 932 (internal quotation marks omitted). Taking these two factors into consideration, the Court found that the employee's private interest in a temporary suspension without pay was "relatively insubstantial," as long as the employee received a sufficiently prompt post-suspension hearing. *Id.* The Court next considered the State's competing interest, and concluded that "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Id.* Because "the government does not have to give an employee charged with a felony a paid leave at taxpayer expense," the Court rejected the argument that the State's interest should have been met by suspending the officer with pay. *Id.*

Lastly, the Court concluded that there was little risk of erroneous deprivation and little value in providing additional procedures. *Id.* at 933-34. The Court explained that "the purpose of any pre-*suspension* hearing would be to assure that there are reasonable grounds to support the suspension without pay." *Id.* at 933. In a prior case, the Court had already concluded that a grand jury indictment provides adequate assurance that a suspension is justified. *Id.* at 934 (citing *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230 (1988)). Likewise, the Court concluded that the imposition of formal criminal charges provided the same assurance. *Id.* While the Court agreed that an indictment provides "more reason to believe an employee has committed a felony" than merely formal charges, the Court found that both assured that the suspension was not arbitrary because in either situation "an independent third party has determined that there is probable cause to believe the employee committed a serious crime." *Id.*

Taking all three factors into consideration, the Court held that the State did not violate the Due Process Clause of the Fourteenth Amendment when it failed to provide the police officer with a pre-suspension hearing before suspending him without pay. *Id.* at 928-36.

As was the case in *Gilbert*, Bruno has only been temporarily suspended without pay. Therefore, his private interest is "relatively insubstantial" because the Pennsylvania Supreme Court has offered Bruno the opportunity for additional post-suspension procedural process in its Suspension Order. In contrast, the PA Supreme Court Defendant's interest in immediately suspending Bruno is significant, because as a member of the State's judiciary, Bruno holds a high visibility position of great public trust, a position that is even more visible than the police officer in *Gilbert*. Also, there is little risk that the failure to provide Bruno with a pre-suspension hearing will result in an erroneous deprivation because he has been indicted by a federal grand jury, which means "an independent third party has already determined that there is probable

cause to believe [Bruno] committed a serious crime." *Id.* at 934. In *Gilbert*, formal criminal charges provided sufficient assurance that there were reasonable grounds to support the officer's suspension without pay, thus eliminating the need for a pre-suspension hearing. Here, Bruno has been indicted by a federal grand jury—that provides even more reason than formal charges for a State to believe that an employee has committed a felony. Certainly, the criminal indictment provides reasonable grounds to support the PA Supreme Court Defendants' decision to suspend Bruno without pay. Accordingly, Bruno has not demonstrated a likelihood of success on the merits of his claim that he was entitled to a pre-suspension hearing before the Pennsylvania Supreme Court suspended him without pay.

**B. Post-Suspension Hearing**

Bruno argues that he was entitled to a post-suspension hearing, but was not afforded one. The PA Supreme Court Defendants agree that Bruno has a right to a post-suspension hearing. However, they argue that the Suspension Order provides Bruno with the opportunity to request a post-suspension hearing. The PA Supreme Court Defendants contend that Bruno cannot proceed on his procedural due process claim because he has not yet taken advantage of the process they have offered him.

A procedural due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. . . . If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.

*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal quotation marks omitted).

In the Suspension Order, the Pennsylvania Supreme Court invites Bruno "to seek relief in this Court for the purpose of vacating or modifying this Order." Compl. Ex. B. Instead of requesting a post-suspension hearing before the Pennsylvania Supreme Court, Bruno filed this federal suit. Bruno does not contest that he did not seek relief from his suspension in the Pennsylvania Supreme Court. Rather, he argues that he went straight to this Court because the Pennsylvania Supreme Court does not have the power to impose his interim suspension; thus a post-suspension hearing was not "realistically available by the rules or from a practical basis." Pl.'s Reply 17. Despite Bruno's contention, The Pennsylvania Supreme Court has held that it has the power to impose interim suspensions on judges based on its supervisory power over the court system. *In re Merlo*, 17 A.3d 869, 871-72 (Pa. 2011); *see also Avellino*, 690 A.2d at 1143. There is no evidence that Bruno will be unable to receive an adequate post-suspension hearing before the Pennsylvania Supreme Court. Therefore, Bruno has not demonstrated a likelihood of success on the merits of his claim at this time because he has not taken advantage of the opportunity for additional post-suspension procedural process offered to him by the Pennsylvania Supreme Court in its Suspension Order.

## V. CONCLUSION

For the above reasons, I will deny Bruno's motion for a preliminary injunction.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on _____ to: